475 S.E.2d 154

STATE of West Virginia ex rel. James H. PAIGE, III, Secretary/Tax Commissioner of the West Virginia Department of Tax and Revenue, Defendant Below, Petitioner,

v.

Honorable Herman G. CANADY, Jr., Judge of the Circuit Court of Kanawha County, James M. Sturgeon, Jr., and Carolyn S. Sturgeon, Plaintiffs Below, Respondents.

No. 23273.

Supreme Court of Appeals of West Virginia.

Submitted March 5, 1996.

Decided July 17, 1996.

Barry L. Koerber, Assistant Attorney General, Charleston, for Petitioner.

Jay M. Potter, Thomas H. Vanderford, IV, James M. Sturgeon, Jr., Pauley, Curry, Sturgeon & Vanderford, Charleston, for Respondents James M. Sturgeon, Jr. and Carolyn S. Sturgeon.

ALBRIGHT, Justice:

James Paige, III, Secretary/Tax Commissioner of the West Virginia Department of Tax and Revenue, petitions this Court for a writ of prohibition to prevent the Circuit Court of Kanawha County from enforcing its order of December 12, 1995, which required that Commissioner Paige be deposed. Commissioner Paige asserts that, as a high-ranking government official, he is not subject to deposition absent exceptional circumstances, a clear showing of necessity, or proof that the relevant information is not available through other discovery procedures. We find that the circuit court abused its discretion in ordering that Commissioner Paige submit to the deposition, and we therefore grant the writ as moulded.

On December 20, 1994, James M. Sturgeon, Jr., and Carolyn S. Sturgeon, plaintiffs below and respondents, submitted a request under the West Virginia Freedom of Information Act ("FOIA"), W.Va. Code § 29B–1–3 (1993),[1] requesting the production of certain documents pertaining to the application of

---

1. West Virginia Code § 29B–1–3(2) requires that "[a] request to inspect or copy any public record of a public body shall be made directly to the custodian of such public record." The Sturgeons explain that under W.Va. 29B–1–2 (1993), "custodian" is defined as "the elected or appointed official charged with administering a public body". The Sturgeons assert that Commissioner Paige, as the Tax Commissioner, is the "appointed official charged with administering" the Tax Division, which is a public body. Hence, Commissioner Paige, rather than one of his subordinates, was the proper recipient of their FOIA request.

State tax laws from 1978 to the present.[2] The Sturgeons explain that they made their FOIA request based upon their belief that the Tax Division has historically disregarded its own precedents and has thereby prevented taxpayers from receiving predictable and equal treatment by the Tax Division. The Sturgeons assert that this is a problem that will not be resolved unless and until private tax practitioners assemble a data base of such precedents. The Sturgeons further assert that, for several years prior to their FOIA request, they tried to convince the Commissioner to comply with his statutory duty to disclose such information, which was created under W.Va. Code § 11–10–5d(k) (1995).[3]

Commissioner Paige explains that this case consists of identifying what documents actually exist and determining to what extent such documents are exempt from disclosure under the tax payer confidentiality statute contained in West Virginia Code § 11–10–5d (1995). The Commissioner submits that all of the documents discovered, except the administrative decisions and the taxpayer correspondence, have been released.

With regard to the administrative decisions, Commissioner Paige asserts that the Tax Commissioner was not required to release such decisions, or summaries thereof, prior to the adoption of W.Va. Code § 11–10–5d(k), which became effective on July 1, 1986. The Commissioner acknowledges, however, that W.Va. Code § 11–10–5d(k) created a mandatory duty to release such information, after having omitted any identifying characteristics or facts about the taxpayer.

With regard to taxpayer correspondence, Commissioner Paige asserts that there are two types, general correspondence and super credit certification letters. The Commissioner argues that, because the Legislature created a limited exception to the general principle of confidentiality of taxpayer information with regard to the super credit in W.Va. Code § 11–10–5s(b)(1)(1995), taxpayer information beyond that outlined in the exception must remain confidential. Therefore, Commissioner Paige contends, there is no basis for releasing general taxpayer correspondence, and the release of such information would subject him to criminal penalties under W.Va. Code § 11–10–5d.

Commissioner Paige denied the Sturgeons' FOIA request by letter dated April 4, 1995. Mr. Sturgeon represents that he engaged in a number of discussions with Tax Division personnel and Commissioner Paige personally in an attempt to obtain compliance with the FOIA request during the three-month interim between the submission of the request and Commissioner Paige's denial. Following Commissioner Paige's denial, the Sturgeons, on April 13, 1995, filed a petition for an injunction and for a declaratory judgment.

In the course of discovery, the Sturgeons deposed Dale W. Steager, General Counsel to Commissioner Paige, and eleven other Tax Department employees who had been designated as its representatives in response to a

---

2. According to Commissioner Paige's petition, the following is a summary of the requested documents: (1) All administrative decisions issued by the Office of Hearings and Appeals from 1978 to present; (2) all technical assistance advisories issued pursuant to W.Va. Code § 11–10–5r; (3) all notices (including, but not limited to, TSDs, Special Notices and Announcements) issued by the State Tax Commissioner since 1978; (4) all opinions issued by any circuit court of West Virginia since 1978 (including final orders containing findings of fact and/or conclusions of law) on State and local tax matters; (5) all taxability rulings issued by the State Tax Department; (6) all certification or ruling letters containing conclusions of law and analysis of legal positions issued by the State Tax Commissioner; (7) all rulings and opinions issued by the State Tax Commissioner containing conclusions of law or analysis of legal positions, including certification

or approval decisions, to taxpayers in connection with business tax credits; (8) all audit manuals and programs issued to or used by State Tax auditors and field personnel; and (9) any computer files containing portions of the West Virginia Code pertaining to State or local taxation or the tax regulations issued thereunder.

3. West Virginia Code § 11–10–5d(k) states:

The tax commissioner shall release to the public his administrative decisions, or a summary thereof: Provided, That unless the taxpayer appeals the administrative decision to circuit court or waives in writing his rights to confidentiality, any identifying characteristics or facts about the taxpayer shall be omitted or modified to such an extent so as to not disclose the name or identity of the taxpayer.

Rule 30(b)(6) notice of deposition. The Sturgeons also expressed a desire to depose Commissioner Paige. Commissioner Paige originally scheduled a date for such deposition,[4] but later opposed the deposition. The Commissioner states that he informally suggested that the Sturgeons submit written interrogatories or that the parties stipulate facts. However, according to the Commissioner, the Sturgeons insisted upon conducting a deposition. Consequently, Commissioner Paige sought judicial resolution of the question of whether respondents could compel his deposition. The circuit court conducted a hearing, temporarily stayed the deposition, and took the matter under advisement.

At a subsequent hearing, the court ordered that Commissioner Paige submit to the deposition. However, the court limited the deposition to questions regarding: (1) whether, on a previous occasion, Commissioner Paige promised, either in writing or to Mr. Sturgeon directly, to implement the advisory opinion act by publishing those things required by the act; (2) what steps Commissioner Paige had taken to implement the release of the things required by the act, when he took such steps, and what impediments, if any, prevented him from placing into motion the publication of those things; (3) whether Commissioner Paige was specifically instructed by his superior not to publish such things, subject to whether he would invoke an applicable privilege; and, (4) what measures Commissioner Paige could take to redact or to furnish the information without disclosing or violating confidentiality.

In addition, the court prohibited the Sturgeons from inquiring into Commissioner Paige's mental processes, his deliberative processes, the existence of any memorandums concerning Commissioner Paige's mental processes or deliberative processes, communications to which Commissioner Paige can claim a privilege, and matters pertaining to documents already released by Commissioner Paige. The court then granted the Commissioner's motion for a stay of the order to permit the filing of this petition.

Respondents, the Sturgeons, submit that the subject matter for the deposition would include: (1) the actions Commissioner Paige has ordered the Tax Department to take to comply with the disclosure statutes, both retroactively and prospectively; (2) the time frames necessary for the Tax Commissioner to comply retroactively with the mandates of the FOIA and the tax disclosure provisions applicable to administrative decisions; (3) whether the Tax Commissioner has acted in good faith or in willful and intentional disobedience of a statutory duty; and (4) how quickly his department could comply with any judgment order entered by the circuit court to compel compliance with both the FOIA and the Tax Procedures Act mandating disclosure of administrative decisions.

After the filing of this petition, the Tax Commissioner began releasing the administrative decisions, which had been redacted or modified to preserve taxpayer confidentiality. Since the submission of this petition, petitioner has notified this Court, through various motions for leave to supplement the record, that respondents have received redacted copies of the administrative decisions that were issued between July 1, 1986 and June 30, 1995. The Commissioner also represented that some of the decisions issued and served after June 30, 1995, have been issued and the remaining decisions would be issued on a going forward basis.

## PROHIBITION

Under West Virginia Code § 53-1-1 (1994), "[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." The issue involved in the instant case is whether the circuit court exceeded it's legitimate power in ordering that Commissioner Paige submit to a deposition.

■■■ " 'Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge

---

**4.** Commissioner Paige asserts that, although he agreed to a convenient date upon which to con-

duct the deposition, he did not agree that his deposition was appropriate or necessary.

its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.' Syl. pt. 2, *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E.2d 717 (1973)." Syllabus point 1, *State ex rel. Williams v. Narick*, 164 W.Va. 632, 264 S.E.2d 851 (1980). This Court has previously determined that erroneous discovery orders may be subject to a writ of prohibition. "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syllabus point 1, *State Farm v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992).

## DEPOSITION

Commissioner Paige argues that the circuit court abused its discretion by failing to give substantial weight to federal case law which prohibits deposing high-ranking officials. The Commissioner asserts that, according to *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir.1979), as a high-ranking governmental official he is not normally required to submit to a deposition. He acknowledges that his immunity is not absolute, but argues that the deposition would interrupt his official duties, inquire into the mental processes of decision-making, or seek information about which he has no personal knowledge. Commissioner Paige states that he has offered to either answer written interrogatories or enter into written stipulations of fact with plaintiffs. Furthermore, he asserts that his testimony would not provide any additional information not already presented by other Tax Department witnesses.

Finally, Commissioner Paige expresses his belief that the Sturgeons' only motivation for conducting this deposition is their belief that a showing of bad faith on the part of Commissioner Paige would allow them to recover their attorney fees and court costs from Commissioner Paige personally. The Commissioner expresses his concern that Judge Canady implicitly allowed for the Sturgeons' inquiry into the Commissioner's good faith by recusing himself from the case without ruling on the issue of whether respondents could hold Commissioner Paige personally responsible for any court ordered attorney fees or costs.[5] The Commissioner argues that bad faith is not an element for recovering attorney fees under the FOIA, which provides that "[a]ny person who is denied access to public records requested pursuant to this article and who successfully brings a suit ... shall be entitled to recover his or her attorney fees and court costs from the public body that denied him or her access to the records." W.Va. Code § 29B–1–7.[6]

The Sturgeons respond that *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226 (9th Cir.1979), deals with the extent of discretion which lower courts have in dealing with pretrial discovery and contains no discussion of the circumstances under which an official could or could not be deposed. The Sturgeons argue that the order requiring that Commissioner Page be deposed was within the circuit court's discretion and should not be disturbed by this Court.

The Sturgeons further assert that, unlike the federal case law relied upon by the Commissioner, this suit does not involve a situation in which discovery is sought from a governmental official whose only connection with the underlying factual situation is that he or she has remote overall supervisory responsibility for a government unit. Respondents assert that petitioner is a party to this action because, under W.Va. Code § 29B–1–2, Commissioner Paige is legislatively designated as the custodian of the public records sought by the Sturgeons. More-

---

5. According to Commissioner Paige's petition, the Sturgeons have asked that the circuit court conduct a jury trial on the issue of whether damages in the form of attorney fees and court costs should be assessed against the Tax Commissioner in his individual capacity.

6. We note that this matter is not before us with respect to recovery of attorney fees from the public body, and any recovery from the Commissioner individually would be permitted only under the narrowest grounds. We leave the determination of this issue, if it is raised, for the trial court.

over, the Sturgeons argue that Commissioner Paige has failed to provide any set of facts to support his position that the circuit court failed to give substantial weight to federal case law. Therefore, the Sturgeons argue, in the absence of a factual basis supporting Commissioner Paige's claim of immunity, his claim is tantamount to an assertion of absolute immunity. The Sturgeons note that in *State v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995), this Court discussed the importance of a factual analysis in a writ-of-prohibition setting. The Sturgeons assert that, unlike *Canady*, the circuit court decision in this case is clearly documented in the record, as evidenced by the limitations the court placed on the deposition. Furthermore, the Sturgeons assert that, under *State v. Canady, Id.*, Commissioner Paige has the burden of establishing the executive privilege he claims.

The Sturgeons further submit that the tax officials who were deposed testified that they were either unfamiliar with the departmental policies and procedures which control the type and amount of information that is released to the public or that their involvement with these policies and procedures had been merely to implement them. According to the Sturgeons, all of the employees maintained that they were not involved in the establishment of the policies and procedures, nor were they conversant in the reasons behind their existence. In addition, none of the employees who were deposed could explain how the Tax Division, as a unit, had responded, was capable of responding, or intended to respond to the FOIA request. Thus, the Sturgeons assert, the testimony of Commissioner Paige is necessary to obtain information regarding the Tax Department's policies and procedures.

Finally, Mr. Sturgeon claims that he had numerous personal communications with Commissioner Paige while attempting to seek the Commissioner's compliance with W.Va. Code § 11–10–5d(k). Consequently, the Sturgeons assert, Commissioner Paige has personal involvement in the events leading up to this litigation and the relevant actions taken by his Department during the course of this litigation. Therefore, they argue, as the possessor of personal knowledge concerning these events, Commissioner Paige's deposition is peculiarly appropriate.

Under Rule 26(c) of the West Virginia Rules of Civil Procedure:

Upon a motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) That the discovery not be had;

(2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; . . . .

Although it appears that we have never before been asked to determine the circumstances under which the taking of a deposition creates sufficient annoyance, embarrassment, oppression, or burden to a government official to warrant a protective order prohibiting the deposition, we have discussed what factors the court should consider in determining whether a discovery request is unduly burdensome when it does not involve a government official. In *State Farm v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992), we held:

Where a claim is made that a discovery request is unduly burdensome under Rule 26(b)(1)(iii) of the West Virginia Rules of Civil Procedure, the trial court should consider several factors. First, a court should weigh the requesting party's need to obtain the information against the burden that producing the information places on the opposing party. This requires an analysis of the issues in the case, the amount in controversy, and the resources of the parties. Secondly, the opposing party has the obligation to show why the discovery is burdensome unless, in light of the issues, the discovery request is oppressive on its

face. Finally, the court must consider the relevancy and materiality of the information sought.

*Id.* at syl. pt. 3, 425 S.E.2d 577.

We have also reviewed the appropriateness of a protective order in an instance when the party requesting the protective order made only a blanket assertion of privilege, and we found that the " '[i]ssuance of a broad protective order, based upon the assertion of a blanket privilege against discovery, without scrutiny of each proposed area of inquiry and without giving full consideration to a more narrowly drawn order constitutes abuse of discretion under West Virginia Rule of Civil Procedure 26(c)'...." Syl. pt. 1, *State ex rel. Shroades v. Henry,* 187 W.Va. 723, 421 S.E.2d 264 (1992) (Reversed circuit court issuance of a protective order to a hospital claiming certain documents were privileged under W.Va. Code § 30–3C–1, *et seq,* and held that the trial court should have conducted an *in camera* hearing to determine whether the documents were subject to a privilege.); Syl. pt. 7, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988) (Reversed circuit court issuance of a protective order to an attorney who represented the appellee, and who asserted only a general need for protection as his ground for requesting the protective order).

As previously noted, however, in the instant case we are asked to determine whether a discovery deposition request may be found to be an annoyance, embarrassment, oppression, or undue burden based upon the deponent's position as a government official. Because the language contained in Rule 26(c) of the West Virginia Rules of Civil Procedure is nearly identical to Rule 26(c) as contained in the Federal Rules of Civil Procedure, we look to federal case law for guidance.

In *United States v. Northside Realty Associates,* 324 F.Supp. 287 (N.D.Ga.1971), the United States District Court for the Northern District of Georgia, reviewed plaintiff's motion for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure and commented:

> It has been recognized that a member of the Cabinet or the head of a large executive department should not be called upon to give his deposition if such deposition is taken in order to probe the mind of the official to determine why he exercised his discretion as he did in regard to a particular matter. *De Cambra v. Rogers,* 189 U.S. 119, 122, 23 S.Ct. 519 [520–21], 47 L.Ed. 734 (1903) and *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999 [1004–05], 85 L.Ed. 1429 (1941). The case of *Wirtz v. Local 30, International Union of Operating Engineers,* 34 F.R.D. 13 (S.D.N.Y.1963) extends this doctrine to allow the taking of personal testimony of a cabinet official *only on a clear showing that the testimony of the official is necessary to prevent injustice to the party [requesting it].*

*Id.* at 293 (emphasis added).

Other federal courts, while not expressly referencing Rule 26(c), have applied this rule in the context of a request for a protective order. *See Cornejo v. Landon,* 524 F.Supp. 118, 122 (N.D.Ill.1981) (deposition of Acting Commissioner of the Immigration and Naturalization Service disallowed where party requesting deposition failed to show that the information sought was not available from other persons, or through interrogatories or other discovery devices, and where requesting party failed to show that the deposition was necessary to prevent injustice.); *Halderman v. Pennhurst State School and Hosp.,* 96 F.R.D. 60, 64 (E.D.Pa.1982) (recognized that "[d]epartment heads and similarly high-ranking officials should not ordinarily be compelled to testify unless it has been established that the testimony to be elicited is necessary and relevant and unavailable from a lesser ranking officer", and held that testimony of the Secretary of Pennsylvania Department of Public Welfare would not be compelled unless defendants requesting deposition met this test.). Cf. *Community Fed. Sav. & Loan v. Fed. Home Loan Bank,* 96 F.R.D. 619 (D.D.C.1983) (deposition of members of the Federal Home Loan Bank Board not justified in the absence of a showing of bad faith with respect to the Board's decision to appoint a conservator for Community Federal Savings & Loan, and in the absence of a showing that the administrative record on which the decision was based was inade-

quate.); *Sweeney v. Bond,* 669 F.2d 542, 546 (8th Cir.1982) ("Governor's qualified immunity protected him from deposition absent a showing by plaintiffs of specific need. Plaintiffs failed to show that Governor Bond possessed information which was essential to plaintiffs' case and which could not be obtained from ... other staff members."), *cert denied,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); *Peoples v. United States Department of Agriculture,* 427 F.2d 561, 567 (D.C.Cir.1970) (Supplemental opinion on rehearing) ("subjecting a cabinet officer to oral deposition is not normally countenanced.") (Supplemental opinion on rehearing); *Capitol Vending Co. v. Baker,* 36 F.R.D. 45, 46 (D.D.C.1964) (Administrator of National Aeronautics and Space Administration not required to submit to deposition in the absence of a showing that he had any knowledge of matters that were germane to litigation in which he was not a party. Court commented "It would be oppressive and vexatious to require him to submit to an interrogation that might last for several hours and that would, of course, disturb government business.").

The Supreme Court of Vermont was faced with a similar question in *Monti v. State,* 151 Vt. 609, 563 A.2d 629 (1989), when the Governor of Vermont filed a petition for extraordinary relief and an appeal seeking the court's review of the trial courts denial of a protective order to prohibit the taking of her oral deposition. The Vermont court examined existing federal case law and also noted that "[t]he few states that have had occasion to reach this question have adopted this [federal] standard as well." [7] *Id.* at 612, 563 A.2d at 631. The Vermont court observed that:

This is not a doctrine related to the content of the testimony, for which a [sic]

executive branch official might claim executive privilege, but rather a doctrine founded on notions of the public's interest in limiting unnecessary demands on the time of highly-placed public officials. "[P]ublic policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases." *Community Fed. Sav. & Loan Ass'n v. Federal Home Loan Bank Bd.,* 96 F.R.D. 619, 621 (D.D.C.1983). The trial court must balance the prejudice or injustice to the litigant seeking the deposition with the public interest that high public officials not be "hampered or distracted in the important duties cast upon [them] by law." *California State Bd. of Pharmacy v. Superior Court,* 78 Cal.App.3d 641, 644, 144 Cal. Rptr. 320, 322 (1978).

*Id.* at 612–13, 563 A.2d at 631. From the holdings of the various federal and state courts, the Vermont court gleaned a test which we believe fits with the spirit of our previous rulings related to determining when a discovery request is unduly burdensome.

■ We, therefore, hold that highly placed public officials are not subject to a deposition absent a showing that the testimony of the official is necessary to prevent injustice to the party requesting it. When determining whether to allow the deposition of a highly placed public official, the "trial courts should weigh the necessity to depose or examine an executive official against, among other factors, [1] the substantiality of the case in which the deposition is requested; [2] the degree to which the witness has first-hand knowledge or direct involvement; [3] the probable length of the deposition and the

---

7. The Vermont court observed that the following states have adopted the federal standard:

*California State Bd. of Pharmacy v. Superior Court,* 78 Cal.App.3d 641, 644–45, 144 Cal. Rptr. 320, 322–23 (1978) (state attorney general should not be required to give a deposition absent compelling reasons); *Ellingson & Assoc., Inc. v. Keefe,* 396 N.W.2d 694, 696 (Minn. Ct.App.1986) (inquiry of administrative executives should be written, not oral); *Hyland v. Smollok,* 137 N.J.Super. 456, 460, 349 A.2d 541, 543 (App.Div.1975), *cert. denied,* 71 N.J. 328, 364 A.2d 1060 (1976) (state attorney general should not be deposed absent first-hand

knowledge or direct involvement in the facts giving rise to an action, or absent showing that such deposition is essential to prevent injustice); *State v. Beloit Concrete Stone Co.,* 103 Wis.2d 506, 512–513, 309 N.W.2d 28, 31 (Ct. App.1981) (head of state department of natural resources not compelled to testify in oral deposition unless necessary to prevent prejudice or injustice). Cf. *Davis v. United States,* 390 A.2d 976, 981 (D.C.1978) (witness subpoenas quashed as to federal attorney general, state lottery director, and city police chief).

*Id.* at 612, n. 5, 563 A.2d at 631.

effect on government business if the official must attend the deposition; and [4] whether less onerous discovery procedures provide the information sought." *Id.* at 613–14, 563 A.2d at 632. Moreover, we find that the burden is upon the proponent of the deposition to show the necessity of taking an oral deposition of a highly-placed government official. See *Monti v. State,* 151 Vt. 609, 613, 563 A.2d 629, 632 (1989); *Ellingson & Assoc., Inc. v. Keefe,* 396 N.W.2d 694, 697 (Minn.Ct. App.1986); *Hyland v. Smollok,* 137 N.J.Super. 456, 460, 349 A.2d 541, 543 (App.Div. 1975), *cert. denied,* 71 N.J. 328, 364 A.2d 1060 (1976); *Weir v. United States,* 310 F.2d 149, 154–55 (8th Cir.1962).

■ We have carefully reviewed the record before us and the arguments of the parties involved. While respondents, the Sturgeons, have asserted that Commissioner Paige has first-hand knowledge or direct involvement in this case as a result of discussions that took place between the Sturgeon's and Commissioner Paige with regard to the FOIA request and as a result of his position as the "custodian" of the requested documents, we do not believe there has been a sufficient showing that an oral deposition of Commissioner Paige is necessary to prevent injustice. Although the Commissioner is designated as the "custodian" of the administrative decisions, this is obviously a function that would be executed through his staff, rather than by the Commissioner personally. More importantly, however, we find that respondents have failed to show that they could not obtain the information they seek through less onerous discovery procedures, such as written interrogatories.

While the trial judge properly recognized that the Sturgeons are prohibited from inquiring into Commissioner Paige's mental or deliberative processes and limited the deposition accordingly, we find that the court exceeded its legitimate powers by ordering Commissioner Paige to submit to a deposition without due consideration of the factors we have identified in this opinion. Moreover, we find that upon due consideration of the disruptive effect taking a deposition would have on the petitioner's ability to conduct the affairs of his office and upon due consideration of whether less onerous discovery procedures would provide the relevant informa-

tion sought, no substantial reason appears why any questions which remain material to the underlying action can not be posed and answered by written interrogatories. Finally, we note that, under the supplemented record as it now appears before us, much of what may have remained unanswered when this case came to us may now be moot.

Accordingly, the Circuit Court of Kanawha County is prohibited from enforcing its order announced December 12, 1995, requiring the petitioner to submit to a deposition. The court shall not order the petitioner to submit to a deposition until and unless the trial court finds that the respondents have met their burden of showing the necessity for a deposition, the court has weighed the factors required to determine the necessity for such deposition, and the court has made appropriate findings of fact and conclusions of law with respect thereto. In the absence of such findings, further discovery may be conducted by written interrogatory to the extent appropriate under all of the circumstances. If further discovery is permitted, the trial court shall limit its scope to that which is appropriate to the action pending before it, to the court's authority to grant injunctive and declaratory relief, to its authority arising under W.Va. Code § 29B–1–5, and to the record as now supplemented.

Writ granted as moulded.